Opinion issued June 17, 2004



     












In The
Court of Appeals
For The
First District of Texas




NO. 01-03-00112-CV




GREENWOOD INSURANCE GROUP, INC., Appellant

V.

UNITED STATES LIABILITY INSURANCE COMPANY, Appellee




On Appeal from the 113th District Court
Harris County, Texas
Trial Court Cause No. 02-29393




O P I N I O N
          The issue before the Court is whether an insurance broker’s professional
liability policy provides coverage to the broker for two suits brought against the
broker by its client, based on the broker’s procurement of coverage for the client from
an insurer that subsequently became insolvent. To decide this issue, we must
examine an insolvency exclusion in the professional liability policy. The trial court,
after reviewing the policy, concluded that it provided no coverage to the broker and
granted summary judgment in favor of the broker’s insurer. We affirm.
BACKGROUND
1. The relationship between Greenwood and All-Tex
          Appellant, Greenwood Insurance Company (“Greenwood”) is an insurance
broker, and All-Tex Roofing, Inc. (“All-Tex”) is its client. On behalf of All-Tex,
Greenwood secured a $2 million per occurrence comprehensive general liability
insurance policy. Greenwood placed the first $1 million of primary coverage with
Resure, Inc., a surplus lines carrier with a “B” rating. Greenwood also obtained an
excess policy from United National Insurance Company (“United National”).
2. The Guillen Case
          While the Resure policy was in place, Braulio Guillen filed a personal injury
suit against All-Tex. The Guillen case resulted in a judgment against All-Tex for
$1.3 million dollars. The excess insurer, United National, paid a portion of the
damages against All-Tex, but Resure had been declared insolvent two years earlier
and provided no primary coverage for All-Tex. 
3. All-Tex sues Greenwood
          All-Tex, in turn, sued its broker, Greenwood, in two separate suits because the
risk that Greenwood had placed with Resure did not provide any primary coverage
as a result of Resure’s insolvency. In the first suit,


 All-Tex alleged that Greenwood
was negligent for failing to: (1) ascertain the financial condition of Resure before
placing coverage, (2) stay apprised of Resure’s solvency, (3) notify the Commission
of Insurance regarding reasonable doubt about Resure’s stability, (4) place All-Tex’s
insurance coverage through an admitted carrier, (5) obtain an excess policy that
would have “dropped down” in the event that Resure became insolvent, and (6)
disclose that Greenwood did not possess


 sufficient knowledge and expertise to
determine the eligibility of a surplus lines insurer. All-Tex also alleged that
Greenwood had violated the DTPA by representing


 that (1) the policy issued by
Resure would provide $1 million in primary coverage for covered claims, (2) the
Resure policy had characteristics, uses and benefits that it did not, (3) the policy was
of a particular standard or grade when it was of another, (4) the policy conferred
rights, remedies or obligations which it did not have, and (5) the Illinois Guaranty
Fund would pay claims against Resure of up to $300,000 per occurrence. Finally,
All-Tex alleged that Greenwood had failed to (6) disclose information concerning
Resure, in an


 attempt to induce All-Tex into a transaction that it would not have
entered into had it known
 about the information, (7) properly advise All-Tex about the types of coverage that
were needed to ensure that All-Tex was at all times properly insured, and (8) to obtain
excess insurance that would “drop down” if a primary insurer became insolvent.
          All-Tex also filed a second suit against Greenwood, in which it also alleged
that Greenwood had failed to provide “drop down” coverage in the event of a primary
insurer’s insolvency and had failed to advise Greenwood about the types of insurance
coverage needed to ensure that it was properly insured.
4. Greenwood defended by USLIC
          Greenwood called upon its own insurer, United States Liability Insurance
Company (USLIC), to defend it in the All-Tex lawsuits. USLIC defended
Greenwood, under a reservation of rights, and obtained a summary judgment in favor
of Greenwood by arguing that (1) the case was barred by limitations and (2) the
Guillen claim was not covered by the Resure policy because of an employee
exclusion in the policy. 
5. USLIC brings a declaratory judgment action
          However, after this Court found that the summary judgment had been granted
erroneously and remanded the case to the trial court,


 USLIC filed a declaratory
judgment action contending that it owed no duty to defend or indemnify Greenwood
for losses arising out of the All-Tex lawsuits.
PROPRIETY OF SUMMARY JUDGMENT
          USLIC filed a motion for summary judgment in the declaratory judgment
action, contending that it had no duty to defend or indemnify Greenwood because the
professional liability policy issued to Greenwood contained an “insolvency
exclusion,” which USLIC argued applied to prevent coverage because Greenwood
had obtained coverage for All-Tex with a company that did not meet certain standards
set forth in the policy.
1. Standard of review and burden of proof
          We review the appeal under the usual standards of review applicable to
traditional motions for summary judgment. Tex. R. Civ. P. 166a(c); see Centeq
Realty, Inc. v. Siegler, 899 S.W.2d 195, 197 (Tex. 1995) (all evidence favorable to
nonmovant taken as true and reasonable inferences indulged in nonmovant’s favor); 
Nixon v. Mr. Property Mgmt. Co., 690 S.W.2d 546, 548 (Tex. 1985)
(defendant-movant bears burden to show no genuine issue of material fact and
entitlement to judgment as matter of law).
2. Law applicable to interpretation of insurance policies
          Insurance policies are controlled by rules of interpretation and construction
applicable to contracts generally. Nat’l Union Fire Ins. Co. v. CBI Indus., Inc., 907
S.W.2d 517, 520 (Tex. 1995). The primary concern of a court in construing a written
contract is to ascertain the true intent of the parties as expressed in the instrument. 
Id. Terms in contracts are given their plain, ordinary, and generally accepted meaning
unless the contract itself shows that particular definitions are used to replace that
meaning. W. Reserve Life Ins. v. Meadows, 152 Tex. 559, 261 S.W.2d 554, 557
(1953). If a written contract is so worded that it can be given a definite or certain
legal meaning, it is not ambiguous. Nat’l Union Fire, 907 S.W.2d at 520. The
interpretation of an unambiguous contract is a question of law for the court. Perry
v. Houston Indep. Sch. Dist., 902 S.W.2d 544, 547 (Tex. App.—Houston [1st Dist.]
1995, writ dism’d w.o.j.). If an insurance policy is ambiguous, however, it will be
interpreted in favor of the insured. Grain Dealers Mut. Ins. Co. v. McKee, 943
S.W.2d 455, 458 (Tex. 1997).
3. Duty to defend
          An insurer’s duty to defend is determined under the “eight-corners” rule by
looking to the allegations in the pleadings and the language of the insurance policy. 
Nat'l Union Fire Ins. v. Merchs. Fast Motor Lines, Inc., 939 S.W.2d 139, 141 (Tex.
1997). In applying the eight-corners rule, a court must give the allegations in the
petition a liberal interpretation. Id. Generally, an insurer has a duty to defend if the
petition potentially states a cause of action that falls within the policy coverage. Id.
          With the above principles in mind, we turn to the issue of whether USLIC had
a duty to defend Greenwood in the All-Tex litigation. The professional liability
policy issued to Greenwood provided the following coverage:
[USLIC] will pay on behalf of [Greenwood] any Loss excess of the
Deductible not exceeding the Limit of Liability to which this coverage
applies that [Greenwood] shall become legally obligated to pay because
of Claims first made against [Greenwood] during the Policy Period or
if applicable, during any Extension Period, for Wrongful Acts of
[Greenwood] or because of Personal Injury arising out of Wrongful Acts
of [Greenwood].

The policy also contained the following insolvency exclusion:



 
This policy does not apply to, and [USLIC] will not defend or pay Loss
for, any Claim


 arising out of, directly or indirectly resulting from,
based upon or in any way involving any actual or alleged:
 
                    Placement of a risk or an insurance or reinsurance
contract, policy or other risk transfer mechanism, device or
funding vehicle with any insurance company, reinsurer,
self-insured trust, group insurance trust, risk retention
group, joint underwriting association or other risk
assuming entity that is not rated B+ or higher by A.M.
Best Company at the time of placement and
 
                              1.       becomes insolvent or bankrupt
 
                              2.       is undergoing receivership,
rehabilitation, or liquidation
proceedings; or
 
                              3.       fails to meet all or part of any
legal or financial obligation.
 
                    Such Claim is not covered by this Policy regardless of
whether the placement is alleged to have occurred alone, in
combination with, or in a sequence with any Wrongful Act
or legal obligation which is covered by the P


olicy.

                                              USLIC presented summary judgment proof that, at the time Greenwood
procured the Resure policy for All-Tex, Resure was rated “B” by A.M. Best
Company, not “B+” as required by the terms of the insolvency exclusion. USLIC
presented further summary judgment proof that, while the Resure policy was in place,
and while the Guillen case was pending against All-Tex, Resure was placed into
receivership. Greenwood did not submit any controverting evidence on the issues of
Resure’s rating or insolvency.
          Although never decided in Texas, numerous other courts have upheld
insolvency exclusions in professional liability policies, such as the one in this case.
In Barron v. Scaife, 535 So. 2d 830 (La. App. 2nd Cir. 1988), the victim of a car
accident sued her insurance broker after discovering that her insurance carrier was
insolvent. Id. at 831. The broker, in turn, filed a claim with its professional liability



insurer, seeking indemnification for any amounts it should be adjudged liable in the
underlying suit. Id. The professional liability insurer denied coverage


 based on an
exclusion for any claims “arising from or related to . . . the insolvency, receivership,
bankruptcy or liquidation of any insurance company.” Id. at 832. The Louisiana
court of appeals


 held that the clear and unambiguous language of the policy excluded
coverage, even for claims that the broker intentionally failed to inform its client of the
insurer’s insolvency. Id. at 832-33.
          In St. Paul Fire Ins. Co. v. Cohen-Walker, Inc., 320 S.E.2d 385 (Ga. Ct. App.
1984), an insurance broker’s client sued the broker, alleging that the broker had
procured medical insurance for the client with an insurer that became insolvent. Id.
at 386. The broker then turned to its own professional liability


 insurer for coverage. 
See id. at 387. The professional liability policy provided coverage to the broker for
“loss caused by negligence in your insurance business,” but excluded coverage for
“claims resulting from the inability of an insurance company to pay its debts. This
includes claims related to an insurance company involved in receivership or
liquidation proceedings.” Id. The Georgia court of appeals


 held that the language of
the policy was clear and unambiguous and excluded coverage when the injury giving
rise to the claim was the recommended insurance company’s inability to pay a claim
due to insolvency. Id. at 388.
          In Kleneic v. White Lake Marine Corp., 533 N.Y.S.2d 909, 910 (1988), the
court held that the terms of an insolvency exclusion, such as that present in this case,
“are clear and broad, and extend to any claim which arises out of or in connection
with the financial insolvency of any insurer.” Id. at 910. Nevertheless, the court
found that the errors and omissions insurer could not rely on the clause because of an
unreasonable delay in providing notice of the disclaimer. Id. 
          In Transamerica Ins. Co. v. Snell, 627 So.2d 1275 (Fla. 1st Dist. Ct. App.
1993), the plaintiff, Snell, sued an insurance agency, Tison and Associates, that had
procured health insurance for Snell’s employer with an insurer that later became
insolvent and was unable to pay Snell’s claims. Id. at 1276. Snell then sought a
declaratory judgment that Tison’s error and omissions insurer, Transamerica, was
liable for Tison’s errors. Id. Transamerica denied coverage to Tison based on a
policy exclusion for “any claim arising out of insolvency, receivership, or bankruptcy
of any organization (directly or indirectly) in which [Tison] has placed or obtained
coverage . . .”. Id. The Florida court of appeals


 held that “Snell’s action against
Tison and Associates is within the clear and unambiguous insolvency exclusion of
the Transamerica policy, and Tison and Associates is thus not covered for this risk
under the Transamerica policy.”


 Id.
          In its response to USLIC’s motion for summary judgment, Greenwood does not
argue or distinguish the cases cited above. Instead, Greenwood argues that because
some of the allegations of the All-Tex petitions are unrelated to, and independent of,
Resure’s insolvency, USLIC should have to defend the entire case, despite the
existence of the insolvency exclusion. Specifically, Greenwood claims that the
Guillen lawsuit would never have been covered by the Resure policy because of an
exclusion in the Resure policy for bodily injury claims by employees. Greenwood
argues, therefore, that any claims by All-Tex arising out of an alleged failure to
procure the appropriate coverage is a separate and independent loss from any loss
caused by Resure’s insolvency. Greenwood also alleges that All-Tex’s DTPA claims
based on Greenwood’s failure to accurately represent the coverage that it would
procure


 would require a defense of the entire case by USLIC, even if All-Tex’s claims
relating directly to the Resure insolvency, standing alone, would not. Essentially,
Greenwood argues that, because several of the claims against it do not “arise out of”
Resure’s insolvency, All-Tex’s petitions state a cause that potentially falls within
coverage and thus triggers USLIC’s duty to defend under Greenwood’s professional
liability policy. We disagree. 
                                                          The professional liability policy excludes all claims “arising out of, directly or
indirectly resulting from, based upon or in any way involving” placement of a risk
with an entity that is not rated B+ or higher, and which becomes insolvent or
bankrupt. This broadly-worded language excludes, not only claims “arising out of”
Resure’s bankruptcy, but also claims “in any way involving” Resure’s bankruptcy. 
Resure’s bankruptcy set into motion a chain of events that caused All-Tex to sue
Greenwood, and, in turn, led Greenwood to call on USLIC, its professional liability
carrier, for defense and indemnity. Furthermore, there is no evidence that Resure
denied All-Tex coverage based on the employee exclusion. Thus, Greenwood’s
argument that the Resure policy might not have covered the loss is mere speculation. 
It is undisputed that Resure did not deny coverage to All-Tex based on the employee
exclusion—it became insolvent and could not cover any loss caused by the Guillen
suit. Thus, all causes of action alleged in both of All-Tex’s petitions arise from or
relate to Resure’s insolvency. All-Tex’s claims relating to the employee exclusion
of the Resure policy are not, as Greenwood argues, an independent cause of its loss. 
As such, all claims asserted by All-Tex against Greenwood are expressly excluded
from Greenwood’s professional liability coverage through the insolvency exclusion
in the policy. 



4. Ripeness of Indemnity Issue
          Greenwood contends that the trial court erred by granting summary judgment
on USLIC’s duty to indemnify Greenwood because the issue was not yet ripe. An
insurer’s duty to defend and duty to indemnify are distinct and separate duties. 
Trinity Universal Ins. Co. v. Cowan, 945 S.W.2d 819, 821-22 (Tex. 1997). Thus, an
insurer may have a duty to defend but, eventually, no duty to indemnify. Farmers
Texas County Mut. Ins. Co. v. Griffin, 955 S.W.2d 81, 82 (Tex. 1997). For example,
a plaintiff pleading causes of action based on both negligent and intentional conduct
may trigger an insurer’s duty to defend, but a finding that the insured acted
intentionally and not negligently may negate the insurer’s duty to indemnify. Id. 
Such a fact would not be known until after a trial, thus the duty to indemnify would
not be ripe until the trial was completed. However, the duty to indemnify may be
justiciable before the insured’s liability is determined in the liability lawsuit when the
insurer has no duty to defend and the same reasons that negate the duty to defend
likewise negate any possibility that the insurer will ever have a duty to indemnify. 
Id.
          Greenwood argues that USLIC’s duty to indemnify was not ripe because there
was a fact issue yet to be determined. Specifically, Greenwood argues that there is
a question of fact about whether Guillen was an employee of All-Tex. Greenwood
contends that if Guillen was an employee of All-Tex, there is a provision of the
Resure policy that would exclude coverage, and that, as a result, All-Tex’s damages
would have been caused by Greenwood’s failure to obtain a policy that provided the
necessary coverage, not by its placement of the risk with an insurer that became
insolvent.
          As we stated earlier, it is undisputed that Resure did not deny coverage to All-Tex based on any policy provision. Instead, Resure did not pay because it became
insolvent. Thus, any question of fact based upon whether Resure may have
eventually paid or denied coverage is irrelevant. All-Tex’s losses were not caused by
Resure’s denial of coverage.
          In this case, there is no fact issue to be determined and the same reasons that
negate the duty to defend likewise negate any possibility that the insurer will ever
have a duty to indemnify. See Griffin, 955 S.W.2d at 82. Accordingly, we hold that
the trial court did not err by granting summary judgment on USLIC’s duty to
indemnify.
5. Waiver and Estoppel
          Greenwood argues that the trial court erred by granting summary judgment to
USLIC even though Greenwood had pleaded the affirmative defenses of waiver and
estoppel. Specifically, Greenwood claims that USLIC never reserved its rights under
the “dishonest act exclusion,” and that because it defended for two years before
withdrawing, it should be estopped from denying coverage under that clause. We
have held that coverage for all of All-Tex’s claims against Greenwood were excluded
by the insolvency exclusion of the professional liability policy, not the dishonest act
exclusion. Thus, the issue of whether USLIC properly reserved its rights under the
dishonest act exclusion is irrelevant.
CONCLUSION 
          We affirm the summary judgment.
 
 
                                                             Sherry Radack
                                                             Chief Justice

Panel consists of Chief Justice Radack and Justices Jennings and Higley.

Justice Jennings, concurring.